STATE OF MAINE                              BUSINESS AND CONSUMER COURT

Knox, ss.                                             Docket No. BCD-CV-10-54
                                                      AMH — KNo- 9/19/2011

GEORGE B. HOLMES

                         Plaintiff

          v.

HEIDI L. STEVENS and
FREEDOM L. HAMLIN

                         Defendants

                         DECISION AND JUDGMENT

      This civil case was tried to the court jury-waived on August 22, 23 and 25, 2011.

All three parties were present with counsel, and all presented evidence in the form of sworn

testimony and exhibits.    Counsel presented oral argument August 26.

      Based on the entire record, the court hereby adopts the following findings of fact and

conclusions of law and enters judgment as set forth herein.   All findings are made by a

preponderance of the evidence standard, except regarding the parties' failure to prove

entitlement to punitive damages.

      1.  Plaintiff George Holmes has been involved in the jewelry business for more than

30 years.  Starting in 1981, he began operating his own jewelry store, known as By George

Jewelry.  Mr. Holmes fabricated jewelry items and sold them from his store, along with

items made by others.   For most of the period from 1981 to 2004, the By George Jewelry

business operated as a corporation co-owned by Mr. Holmes and his former wife.

      2.  When they divorced around the year 2000, the corporation was dissolved and the

business continued operating, but as a sole proprietorship owned by Mr. Holmes.  In

addition to the inventory, equipment and other items owned in the business, Mr. Holmes

owned the building in which the business was located, at 376 Main Street, Rockland,

Maine.

                                          1

3. Sometime in 2001 or 2002, Defendant Heidi Stevens, who had been a By George Jewelry customer, started working at the By George Jewelry store. She and Mr. Holmes began an intimate relationship that lasted between one and two years, during part of which they lived together at Ms. Stevens's residence. The relationship ended sometime in 2003 or early 2004, but Mr. Holmes and Ms. Stevens remained on amicable terms.

4. Meanwhile, Ms. Stevens's daughter, Defendant Freedom Hamlin, also became involved in working at Mr. Holmes's business. She showed some interest and ability in the area of jewelry making, so Mr. Holmes, who was somewhat of a father figure to Ms. Hamlin during her late teens and early twenties, taught her many of his skills and techniques. She also was studying jewelry making at the Maine College of Art and elsewhere.

5. By 2003, Mr. Holmes who had been managing the business himself, was looking for a way to reduce his time commitment and duties at the jewelry store. He briefly explored selling the business to an outsider, but when Ms. Stevens and Ms. Hamlin got wind of his thinking, they prevailed on him to allow them to buy into the business. Mr. Holmes's plan, if he had one, is not entirely clear—he may have decided to go into business with Ms. Stevens and Ms. Hamlin and then gradually withdraw from active participation.

In any case, he decided to offer Ms. Stevens and Ms. Hamlin the opportunity to become part-owners of the business, provided they would both commit themselves 100% to the store. Ms. Stevens would be the day-to-day manager of the store, while Ms. Hamlin would concentrate on making and repairing jewelry, although she also worked in the store. Mr. Holmes believed this arrangement would give him the opportunity to reduce his time commitment to the business side of the jewelry store and give him more time make jewelry and pursue his other interests.

6. At some point during the first part of 2004, the three parties reached agreement that each of them would become a one-third shareholder in a new subchapter-S corporation,

2

By George Jewelers, Inc., that would continue to operate the By George jewelry store. It was agreed that Mr. Holmes continue to own the building individually, but that the inventory and other assets of the jewelry store, as well as certain liabilities, would be assumed by By George Jewelers, Inc.

7. Mr. Holmes took the lead in making the legal and financial arrangements. His accountant, Dennis Norton, CPA, handled the accounting aspects of the transition from Mr. Holmes's sole proprietorship to the new corporation. It also appears an attorney was involved in drafting the documents associated with the formation of the corporation, but the evidence is unclear as to who the attorney was or which party retained the attorney.

8. It appears that Ms. Stevens and Ms. Hamlin did not have any legal or accounting representatives involved on their behalf in the transaction. It also appears that, at least compared to Mr. Holmes, neither of the Defendants had much, if any experience, running a business. Ms. Stevens had worked mostly in the field of hospice nursing, and Ms. Hamlin had been a student.

9. On behalf of Mr. Holmes, Mr. Norton structured the financial aspects of the transaction so as to minimize the expense of the transition and also to eliminate any tax consequences for Mr. Holmes. Rather than create a new set of books for the new corporation, Mr. Norton simply made adjustments to the existing financial accounting system for the sole proprietorship, which used Quickbooks software.

10. The transfer of assets and liabilities occurred in the form of a purported section 351 exchange under which a person who transfers property to a corporation in exchange for stock can avoid tax on the transfer. With limited exceptions, Section 351 of the Internal Revenue Code requires that the transfer be "solely in exchange for stock."[1]

---

1. Section 351 reads in part: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation." 26 U.S.C. § 351(a).

11.   Nonetheless, Mr. Holmes claims that the transfer also included a loan from the new corporation to him for $82,235, based on the difference between the net assets of the corporation and the value of the three parties' common stock.   Each party's one-third interest was initially valued at $5,000 on the books of the corporation.  The loan was never reduced to writing, nor is there any indication whatever in the corporate records of a promissory note or similar document being executed or even authorized by any officer, director, shareholder or agent of the corporation.   The sole documentary evidence that the loan even exists is in the Quickbooks records maintained by Mr. Norton and Cindy Waite, the bookkeeper for the company, and in tax returns prepared by Mr. Norton for the corporation.

12.   Mr. Norton and Mr. Holmes claim that the Defendants were made aware of the loan before the formation of the corporation and that they agreed to it.   This assertion is contradicted by the testimony of both Defendants, who claim they were not aware of the loan until after the corporation was formed.   Their position is supported by Ms. Waite, who was called by the Plaintiff but who said Ms. Stevens repeatedly questioned her about the loan—what it was for and why it was in the amount indicated—testimony that clearly corroborates Ms. Stevens's claim not to have known anything about the loan.

13.   Allen Holmes, the accountant who testified for the Defendants, concluded that there was no valid loan because of the absence of any promissory note and also because operative federal tax law would prohibit such a loan being part of a section 351 exchange. Although Mr. Norton testified that the reason why the promissory note did not exist was that the corporate attorney had not been asked to draft a note, an equally plausible explanation is that a note would have been incompatible with how the Plaintiff wanted to characterize the exchange.

4

14. On his loan claim, Plaintiff has the burden to prove the existence and enforceability of a loan from the corporation to himself. Based on the absence of documentation of any loan in the form of a note or any authorization in the corporate records; based on the evidence that such a loan would have been inconsistent with the transaction as structured by the Plaintiff and his advisors, and based also on the evidence suggesting that the Defendants, who together controlled two-thirds of the stock as well as the board of directors, were unaware of any loan at the time, the court concludes he has failed to meet his burden.

15. Accordingly, the court concludes that the corporation is not liable to Plaintiff Holmes on the alleged loan. Likewise, based on Ms. Stevens' testimony that she had no memory of making a $949 loan to the corporation, as shown on the books, the court does not give any effect to that alleged loan.

16. On the other hand, to the extent that the Plaintiff did not intend to make a gift to the Defendants of the entire net assets of his sole proprietorship, there may be a legal or equitable basis other than the purported loan, upon which to recognize his claim to some extent. That issue is addressed further below, in the context of the Plaintiff's unjust enrichment claim.

17. The assets transferred by Mr. Holmes to the new corporation were as follows:

- $9,504.90 in cash

- $13,259.18 in accounts receivable

- $104,430 in store inventory: Ms. Stevens was involved in tracking inventory at the time, so if this figure were incorrect, she could have made an issue of it at the time.

- an indeterminate quantity of material other items associated with jewelry making, including loose gemstones, precious metals and jewelry parts. Mr. Holmes told

5

Mr. Norton that these items were worth $40,000, but this figure was not substantiated.

- a number of tools and other items used in making jewelry: although Mr. Holmes denied intending to transfer most of his tools to the new corporation, they were in fact kept at the store, and were used in the business by him and Ms. Hamlin. Moreover, nothing in the documents relating to the formation of the corporation suggests that the tools were being withheld.[2]

18.    By George Jewelers, Inc. with Plaintiff as president, Freedom Hamlin as vice-president, and Heidi Stevens as secretary and treasurer began operating the jewelry store as of July 1, 2004.   Ms. Stevens was the day-to-day manager of the business, and Mr. Holmes and Ms. Hamlin worked on making jewelry but also participated in the day to day running of the store.

19.    Over time, Plaintiff Holmes grew to dislike Ms. Hamlin.   The reasons for his dislike were not made entirely clear in his testimony, but they seem to center on Ms. Hamlin's ongoing conflicts with her mother.  Ms. Stevens and Ms. Hamlin argued regularly and loudly, and Mr. Holmes over time got sick of it.

20.    In late 2009, Ms. Hamlin took maternity leave for several months.  During her absence, Mr. Holmes and Ms. Stevens conducted a year-end inventory as of December 31, 2009, showing a total of $111,931.86 worth of inventory, valued at cost.   This figure does not include so-called "memo" items, listed as being on consignment.   The memo items were mostly from third-party jewelry makers, but also included items made by both Mr. Holmes and Ms. Hamlin.  Because the two of them were officers and employees of the company, their work product should have been counted as inventory, not "memo" items.

---

[2] Plaintiff Holmes points to the fact his tools are not shown as being transferred in a schedule titled "Furniture and Fixtures" in the materials, *see* Exhibit 1.  However, the schedule obviously relates only to "Furniture and Fixtures," and omits the inventory and loose materials that plainly were transferred, as well as the Plaintiff's tools.

6

21. After Ms. Hamlin's return in March of 2010, Mr. Holmes decided that he was unwilling to stay with her involved in the company. During March and April 2010, he and Ms. Stevens had discussions involving a possible buy-out of Ms. Hamlin as well as a possible buy-out of Mr. Holmes by Ms. Stevens and Ms. Hamlin. None of these discussions went anywhere.

22. On the evening of April 30, 2010, Plaintiff Holmes entered the By George store after normal business hours and removed a considerable portion of the store's inventory and other items, leaving some items and also leaving the display cases in which items were displayed. What Plaintiff Holmes acknowledges taking are tools that he claims he always owned and never transferred to the corporation, and jewelry made by him (his so-called "memo" items). Plaintiff Holmes has conceded that what are listed in the computer inventory as "memo" items for him and Freedom Hamlin are in reality assets of the corporation.

23. Whether Plaintiff Holmes removed more items than he admits is one of the major disputes in this case. Ms. Stevens and Ms. Hamlin claim he took most of the inventory beyond his own creations; he denies doing so. On the one hand, this uncertainty should in fairness fall on the Plaintiff's shoulders because his late-night unilateral action deprived the Defendants of the opportunity to confirm and verify what he took with him. On the other hand, the Defendants never presented any real itemization of what they claim to have been taken. All they produced were some rather indistinct photographs of the display cases, taken with Ms. Stevens's cellular telephone.

24. Mr. Holmes made an after-the-fact effort to reconstruct what remained in the store afterward his removal of items, *see* Exhibit 22. That effort indicated that much or most of what the Defendants claim he took was still in the store's computerized inventory as of May 27, 2010. However, it is not clear that what was listed in the computer inventory

7

as of that date actually matched what was in the display cases, so the court remains in a state of uncertainty about what Plaintiff took on April 30 and what he left behind.

25. Plaintiff left a handwritten note to Ms. Stevens, indicating that he was resigning as officer and director, effective immediately. Ex. 25.

26. When Ms. Stevens learned of the entry later that night, she called the police. Ultimately, the police decided the matter was for the civil courts and did not issue any summonses.

27. In a letter dated April 30, 2011, Plaintiff's attorney notified Ms. Stevens that Plaintiff was willing either to have the corporation buy out Ms. Hamlin's shares for $5,000, or to have the corporation buy him out by paying off the loan balance of $68,594.20 and paying him one-third of the value of the assets of the corporation. In the latter case, rent for the store would increase substantially to $1,250 per week (or $65,000 per year). Predictably, neither option was acceptable to the Defendants, and they made plans to relocate the business.

28. They did so during daylight hours on or about May 27, 2010. The Defendants packed up nearly everything the Plaintiff had left in the store, including display cases as well as inventory. They set up shop across Main Street from the By George store under the name Freedom Jewelers. Freedom Jewelers is separately incorporated.

29. The court finds and concludes, by agreement of the parties, that the parties are entitled to an accounting among them, and that the corporation By George Jewelers, Inc. should be dissolved.

30. For purposes of the accounting, the court finds and concludes as follows:

- As of May 27, 2010, the store inventory was about $110,000, excluding all "memo" items.

8

- The total value of the inventory items Mr. Holmes took out of the store on April 30, 2010 is at least $20,000, based on his testimony and exhibit 20. The cost value of the items listed in exhibit 20 is $27,469.74, but about $7,500 worth of subtractions for items listed but not taken is appropriate. However, the further subtractions for items Mr. Holmes claims he owned (the lobster claw jewelry for instance) are not valid.

- The $20,000 figure reflects "at least" what Mr. Holmes took, because he may well have taken more. Certainly, the Defendants claim he did. The problem is that they have failed to prove any particular dollar amount, or even given the court a basis on which to estimate the value of what he may have taken. This failure of proof does not mean that the Plaintiff wholly avoids the consequences of his late-night unilateral conversion of assets of which he was only the one-third owner, because the court is denying his unjust enrichment claim in part based on his inequitable conduct on April 30.

- As a fallback to his loan claim, Plaintiff is asking the court to award him damages on an unjust enrichment theory against the Defendants for the value of what he transferred to the corporation. For two reasons, the court declines to recognize Plaintiff's unjust enrichment claim. First, the passage of time since the transfer in 2004 makes it impossible to put a present value on the actual benefit that the Defendants realized from the assets transferred. To do so, one would have to determine whether the Defendants were fairly compensated for the value of their contributions to the corporation over the six years from the transfer to the break-up. In other words, pinpointing to a reasonable degree the amount by which the Defendants were enriched as a result of the transfer is not possible on this record. The second reason is that the Plaintiff's unilateral action

9

makes it impossible to determine exactly what he took and what he left. It is clear he took at least $20,000 worth of inventory, and an additional amount in tools, but because it has not been proved that he took more than $20,000, the court fixed the value of inventory in Plaintiff's possession at $20,000.

- By agreement, the display cases and similar furniture items have no particular value for this analysis—they were all older and thoroughly depreciated for tax purposes. Their actual value is not significant.

- With respect to tools, the court finds that the tools Plaintiff took with him on April 30 were property of the corporation. However, the court adopts the Plaintiff's opinion of the values of those tools—Ms. Hamlin's assigned values are the cost of new replacements, whereas the items Plaintiff took were in most cases older and/or worn and not worth anywhere near their replacement cost. His values for the tools and similar items he took with him total $3,133. However, the corporation owned a limited amount of additional tools and similar items that the Plaintiff did not take with him, and the court values those items at $867, bringing the total value of the corporation's tools to $4,000.

- The parties have stipulated that Plaintiff has paid $21,982.35 toward debts of By George Jewelers, Inc., and the Defendants have paid a combined $3,134.93 toward that debt.

- Neither side proved that the other had converted or otherwise obtained any other specific assets of the corporation, beyond those listed above.

31. Taking all of the above into account, the court's calculations as to the parties' entitlement for purposes of the accounting requested by all parties is as follows:

- Defendants have stipulated that their entitlements and liabilities as calculated by the court are all joint and several, meaning that the court does not need to

10

allocate between the two Defendants, but can consider them as one for purposes of this decision.

- The fair value of the By George Jewelers, Inc. inventory as of May 28, 2010 was $110,000. Each party's share of inventory is one-third, or $36,666.67. Plaintiff has $20,000 already, so the Defendants jointly and severally owe Plaintiff $16,666.67 on this item

- The fair value of the tools, supplies and other tangible assets of By George Jewelers, Inc., excluding display cases, fixtures and inventory, totals $4,000, of which Plaintiff's share is $1,333.33. He actually has $3,133 worth of tools and supplies, so he owes the Defendants $2,000 on this item.

- The debts of the corporation total $25,117.28, of which the Plaintiff has paid $21,982.35. His one-third share of debt is $8,372.43, so the Defendants owe him $13,609.92.

- Netting the foregoing amounts results in an award of $28,276.59to Plaintiff against Defendants jointly and severally.

- The court finds none of the parties is entitled to any further dollar recovery on their claims.

32. Turning now to the parties' pleadings, the court finds and concludes as follows:

- For purposes of Counts I, II and III of the Plaintiff's Amended Complaint, Plaintiff proved that Defendants breached their fiduciary duties, misappropriated corporate assets and converted property of the corporation by converting corporate assets to their new business on or after May 28, 2010. However, Plaintiff failed to prove any damages beyond those awarded in the accounting above.

11

- Plaintiff failed to meet his burden on Counts IV, V, VI, VII of the Amended Complaint

- Plaintiff's request for an accounting and dissolution in Count VIII of the Amended Complaint is granted without objection.

- Plaintiff withdrew the defamation claim in Count IX of the Amended Complaint

- For purposes of Counts I, II and III of the Defendants' Counterclaim, Defendants proved that Plaintiff breached his fiduciary duties, misappropriated corporate assets and converted property of the corporation by removing corporate assets without authority on or about April 30, 2010. However, Defendants failed to prove any damages beyond those awarded in the accounting above.

- Defendants failed to prove Counts VI and VII of their Counterclaim, there being no Count V, and withdrew Count IV.

33. For purposes of dissolution, the affairs of By George Jewelers, Inc. are already largely, if not entirely wound up. Because the corporation ceased active operation at the end of May 2010, the accounting reflected in this judgment is as of that May 28, 2010, and does not purport to address the parties' separate financial affairs after that date.

34. The judicial dissolution process permits but does not require appointment of a receiver to wind up the affairs of the corporation, and can also include an order allocating assets of the corporation. *See* 30-C M.R.S. § 1432. The Plaintiff has not requested that the Defendants be required to turn over any of the inventory they retained to make up Plaintiff's share of inventory, and has instead requested a money judgment against the Defendants. The foregoing provisions of this judgment assume and contemplate that the parties will be keeping the tools and inventory now in their respective possession, so no division of assets is necessary.

12

35. The dissolution process permits but does not require a procedure for notifying known creditors and for publishing a notice of dissolution. *See id.* §§ 1407-08. The parties have not requested the court to establish any such procedures, and it appears that the parties as indicated above have paid the corporation's debts. This judgment therefore omits such a procedure.

36. Because the Defendants have possession of the corporate books and records, they shall make them available to the Plaintiff for review and copying at his expense, upon request.

IT IS HEREBY ORDERED ADJUDGED AND DECREED AS FOLLOWS:

1. The court declares and decrees as follows:

   a. For purposes of 30-C M.R.S. § 1430(2), Plaintiff is a shareholder of By George Jewelers, Inc., a Maine corporation

   b. The shareholders of By George Jewelers, Inc. are so divided regarding the management of the business and affairs of the corporation that the corporation is suffering or will suffer irreparable injury or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally

   c. The Maine corporation known as By George Jewelers, Inc. is hereby dissolved, effective October 1, 2011. The court is entering a separate decree of dissolution, a certified copy of which will be sent by the Clerk to the Secretary of State as required by 30-C M.R.S. § 1433.

2. Judgment shall be entered for Plaintiff George B. Holmes against Defendants Heidi L. Stevens and Freedom L. Hamlin jointly and severally in the amount of $28,276.59, with pre-judgment and post-judgment interest as allowed by law.

3. Given that Plaintiff and the Defendants prevailed on different aspects of this case, each party shall bear its own costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order by reference in the docket.

Date: September 16, 2011

A. M. Horton
Justice, Superior Court

JUDGMENT ENTERED: 9.19.2011

14